IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| JOEY L. WHITE, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:09-2705-JFA-JRM |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ANDERSEN DISTRIBUTION, ) | |
| INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

*Pro se* Plaintiff, Joey L. White ("White"), filed this case on October 16, 2009. He alleges that his employer, Andersen Distribution, Inc. ("Andersen"), discriminated against him because of his race (African-American), and retaliated against him for engaging in protected activity. White named several individuals as Defendants who moved to dismiss. After a hearing held May 24, 2010, the individual Defendants were dismissed and the complaint was amended to reflect the Defendant's correct name. Andersen filed a motion for summary judgment on December 2, 2010. Because White is proceeding *pro se,* an order pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) was issued on December 9, 2010, explaining to him his responsibility to respond to the motion for summary judgment. White filed a response on January 12, 2011. Pretrial matters in this case were automatically referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Civil Rule 73.02(B)(2)(e) and (g) DSC.

**Standard for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). A fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. Anderson, 477 U.S. 242 at 248. "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

The defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." *Id.* at 718-19 (citing Anderson, 477 U.S. at 247-48).

"[O]nce the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (1) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (2) showing that the materials cited

do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c) (1)(A-B).

Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Servs. Co., 80 F.3d 954 (4th Cir. 1996). If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e)(1-4).

## **Discussion**

White's *pro se* allegations provide a narrative of events which occurred "within 5 to 6 years." His claims are not clearly articulated. Therefore, at the hearing held on May 21, 2010, the undersigned inquired of White as to the basis of his claims. He responded that his claims were for failure to promote him to a supervisory ("lead") position based on his race, and retaliation for filing a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC"). White reiterated that those were his only two claims at his deposition. (Pl.Dep., Ex. 14-15).

1. Failure to Promote

White alleges that "Andersen failed to promote Plaintiff to lead position on two separate occasions, the first in mid-2005 and the second time in late 2006." (Pl.Mem., p. 3). Andersen asserts that it is entitled to summary judgment because (1) White failed to timely exhaust his administrative

remedies, and (2) even if White properly exhausted his administrative remedies, he cannot show that his non-selection was due to his race.

   a. Exhaustion

   Attachments to White's Roseboro response show that he attempted to exhaust his claims through the administrative process. On November 13, 2007, White filed an "Employment Initial Inquiry Questionnaire" with SCHAC. In that document he indicated that he had been disciplined and denied promotion to lead man because of his race. However, when White filed his "Charge of Discrimination" dated April 4, 2008, he asserted only claims of disparate discipline, harassment, and retaliation between the dates of February 14, 2008 and April 3, 2008. He made no mention of any claim for failure to promote. On May 27, 2009, SCHAC issued a "no cause" finding on the claims listed in White's charge. The Equal Employment Opportunity Commission ("EEOC") adopted the SCHAC finding on July 16, 2009. White then requested an EEOC "Substantial Weight Review" of the SCHAC determination. By letter of August 4, 2009, the EEOC advised White that it had completed the requested review, agreed with the SCHAC finding, and closed his file.

  Andersen argues that White's attempt to exhaust his remedies with respect to his failure to promote claim was flawed because it was untimely and the charge failed to mention the claim. Title VII requires a plaintiff to exhaust his administrative remedies by filing a charge of discrimination with the EEOC, or in the case of a deferral state such as South Carolina, with the appropriate state agency, *i.e.*, SCHAC. As discussed below, certain time limits are required to be met, and plaintiff's claims may be limited by the scope of the administrative charge.

b. Timeliness

Pursuant to Title VII an employee must file a timely charge of discrimination with an appropriate state agency. An extended limitations period is established in deferral states like South Carolina, and the employee must file his charge of discrimination with SCHAC within 300 days of the alleged unlawful employment decision. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009) and 42 U.S.C. § 2000e-5(e)(1). Andersen argues that since White alleged in his charge that the earliest discrimination took place on February 14, 2008, and the second and last failure to promote mentioned by White occurred in 2006, it is obvious that White did not file his charge within 300 days of the alleged employment action. The irrefutable logic of Andersen's argument would apply equally if White's initial questionnaire, filed with SCHAC on November 13, 2007, was considered the date of his charge. According to White, the second lead position was awarded to a Caucasian in "late 2006." (Pl.Mem., p. 3). Even if the alleged discrimination took place on the last day of 2006, and the date of the filing of the initial questionnaire is used as the date of the filing of the charge, it was still not timely filed.

White does not address Andersen's argument nor does he argue that he is entitled to invoke the doctrine of equitable tolling. Instead, he generally argues that he has timely exhausted his administrative remedies because he complained to Andersen's management and "sent a complaint to SCHAC in November of 2007." (Pl.Mem., p. 7). However, as discussed above, even if the November date is recognized as the date of filing, his charge of discrimination was untimely.

2. Scope

Generally, the scope of the claims filed in a judicial complaint is limited to the claims presented in the administrative charge. Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir.

2000). Only those claims included in the initial administrative charge, those claims reasonably related to those claims, and the matters developed during a reasonable investigation of those claims by SCHAC may be pursued in the following lawsuit. Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). The District Court does not have jurisdiction of claims omitted from the charge of discrimination. The purpose of the exhaustion requirement under Title VII is to notify the employer of the charge, to permit the EEOC or state agency to investigate the charge, and to provide a vehicle for the parties to resolve the dispute outside of litigation. Miles v. Dell, Inc., 429 F.3d 480, 491 (4th Cir. 2005).

It is clear that White did not raise his failure to promote claims in the charge filed with SCHAC. He marked the race retaliation boxes as the basis of discrimination. He limited the discrimination to between February 14, 2008 and April 3, 2008. He complained that he was suspended on February 14 and harassed March 4, 12, and 21 of 2008. Nothing in the narrative relates to White's claims that Andersen failed to promote him in 2005 and 2006. White has not shown that his failure to promote claims are reasonably related to the claims stated in his charge, nor that they were developed during the SCHAC investigation. SCHAC would have no reason to investigate time barred claims. Further, White has not shown that Andersen was put on notice of his claims because he stated them in the original questionnaire.

Based on the foregoing, the undersigned concludes that White failed to exhaust his claims that Andersen failed to promote him to a lead position in 2005 and 2006 because of his race.[1]

---

[1] If the Court concludes that White successfully exhausted his failure to promote claims and that they remain viable, Andersen's motion for summary judgment should be denied. White alleges that Caucasians filled the positions. White has produced evidence that he was rated better qualified than the white employee who was promoted to lead position in 2005 (Tommy Cassidy), and the
(continued...)

3. Retaliation

To establish a prima facie case of retaliation, it must be demonstrated that:

(1) the employee engaged in protected activity;

(2) the employer took some adverse employment action against the employee; and

(3) a causal connection existed between the protected activity and the adverse action.

*See* Anderson v. G.D.C., Inc., 281 F.3d 452, 458 (4th Cir.2002); Causey v. Balog, 162 F.3d 795, 803 (4th Cir.1998); Carter v. Ball, 33 F.3d 450, 460 (4th Cir.1994). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence of a legitimate, non-retaliatory reason for the adverse action. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981). If the defendant meets this burden, the plaintiff must show by a preponderance of the evidence that the proffered reason was pretextual, and that the adverse action was imposed because the plaintiff engaged in protected activity. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

A plaintiff need not have filed a formal complaint with the EEOC or a state deferral agency to engage in a protected activity. Complaints to supervisory or management employees concerning harassment or discriminatory treatment as well as informal complaints, filing of internal grievances, and complaints to an agency are included within the definition of protected activity. Warren v. Halstead Industries, Inc., 802 F.2d 746, *cert. denied*, 487 U.S. 1218 (1988) and Mitchell v. Baldrige, 759 F.2d 80 (D.C.Cir. 1985).

---

[1](...continued)
individual who was promoted in 2006 (James Bauer-Schmidt) was not on the list of those rated. Andersen has produced no evidence as to who was actually promoted in 2005 and 2006. Therefore, there are questions of fact as to who was actually promoted and their qualifications when compared to White.

The Fourth Circuit, in Von Gunten v. Maryland, 243 F.3d 858 (4th Cir.2001), addressed what an "adverse employment action" is for purposes of a Title VII retaliation claim. Although "ultimate employment actions" are adverse employment actions, a Title VII retaliation claim does not require an ultimate employment action. In Burlington Northern & Santa Fe R.R. Co. v. White, 548 U.S. 53 (2006), the Supreme Court held that a plaintiff is not required to show "an adverse effect on the 'terms, conditions, or benefits' of employment" to support a retaliation claim (quoting Von Gunten, 243 F.3d at 866). It is sufficient if the plaintiff shows that a reasonable employee finds the employment action "materially adverse" or likely to "dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 60 (quoting Rochon v. Gonzales, 438 F.3d 1211, 1219 (D.C.Cir. 2006)).

Andersen concedes for the purpose of summary judgment that White engaged in protected activity. It argues that White cannot show that he suffered an adverse employment action , nor that there is a causal connection between the activity and the actions about which he complains.

White alleges that Sue Rowan, Julie Berg, Tim Stamper, and Eric Kosch retaliated against him in February and March of 2008 after he submitted the questionnaire to SCHAC in November of 2007. He summarized the alleged harassment in his Roseboro response:

> 26. Specifically, Plaintiff was harassed on March 4, 2008, when Sue Rowan (white) called him a "chatterbox" in front of other employees that were also engaging in conversation and using profanity, specifically the word "shit". Plaintiff found this behavior unwelcome for someone in her position.
>
> 27. Additionally, Plaintiff was harassed on March 12, 2008, when Julie Berg yelled at him in front of other employees, "You need to get to work! Why are you talking?" ["]Hurry up, hurry up, let's go! Why are you talking? Let's go!"
>
> 28. Finally, Plaintiff was also harassed in March 21, when Tim Stamper told him if [he] leaves his table again he would lose his job. Later, in that day Eric Kosch, Plaintiff's immediate supervisor then, had him under surveillance, accusing Plaintiff

of not working fast enough. Why are you talking to this person and you are coming back from break later than other employees, which was all untrue.

29. Plaintiff was verbally and mentally threatened and intimidated. Significantly, the incidents involving Rowan, Berg, Stamper and Kosch happened on weeks to months apart, it was like a sequence of events and that's very intriguing.

(Pl.Mem., p 5).

The undersigned finds that the alleged actions of Rowan, Berg, Stamper and Kosch do not rise to the level of "material harm" as defined in Burlington Northern. The standard set by the Supreme Court is meant to "separate significant from trivial harms." Burlington Northern, 548 U.S. At 54. *See* Brockman v. Snow, 217 F.App'x 201, 206 (4th Cir. 2007) (Failure to respond to plaintiff's phone calls and assignment to difficult work not material); Parsons v. Wynne, 221 F.App'x 197, 198 (4th Cir. 2007) (negative performance evaluation and removal from alternate work schedule not material); and Csicsmann v. Sallada, 211 F.App'x 163, 168 (4th Cir. 2006) (elimination of old position and lateral transfer to new position not material). The actions described above do not amount to a material harm.

However, White also alleges that he was suspended by Andersen on February 19, 2008 and March 27, 2008. (*See* Complaint, p. 4). There is little in the record concerning these suspensions. The undersigned concludes that a suspension would qualify as a "material harm" under Burlington.

Andersen also argues that White cannot show a causal connection between the protected activity and its actions because White has not shown that Andersen, Rowan, Berg, Stamper, and Kosch had knowledge of the protected activity at the time the actions were taken. White appears to assume that SCHAC notified Andersen of his complaints when he filed his initial questionnaire in November of 2007. The undersigned finds White's assumption to be unreasonable. The South

Carolina Human Affairs law, S.C.Code Ann. § 1-13-10, *et. seq.,* establishes a procedure for SCHAC to use in resolving complaints. SCHAC is directed to assist complainants in reducing their complaints to writing in a standard form. The questionnaire that White filed in November of 2007 is a preliminary step in the filing of the formal written complaint. The statute does not contemplate notification of the employer at the preliminary stage. Instead, SCHAC is required to notify the employer after the formal written complaint made in writing and under oath is submitted by the employee. *See* S.C.Code Ann. § 1-13-90. All the actions about which White complains occurred prior to the filing of the charge of discrimination in April of 2008. During his deposition, White could not establish when Andersen, Rowan, Berg, Stamper, and Kosch became aware that he had filed a charge with SCHAC. (Pl.Dep., 32, 91, 118).

The undersigned finds that White has failed to establish a prima facie case of retaliation.

4. Racially Hostile Work Environment

Even though not included by White in his specification of claims, the SCHAC charge and complaint appear to allege that White was subjected to a racially hostile work environment. The basis of the claim are the actions discussed as retaliation above.

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. § 2000e-2(a). This includes creating or allowing a hostile work environment based on race. EEOC v. Central Wholesalers, Inc., 573 F.3d 167 (4th Cir. 2009). To prove a hostile work environment, the plaintiff must show that: (1) he was harassed because of his race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Gilliam v. South

Carolina Department of Juvenile Justice, 474 F.3d 134, 142 (4th Cir. 2007); Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 331 (4th Cir.2003) (en banc).

In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court reaffirmed its previously articulated standard for determining when a plaintiff has established a hostile work environment, stating that a plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-22 (1993)). Actionable harassment occurs when the workplace is "permeated with discriminatory intimidation, ridicule, and insult." Harris, 510 U.S. at 21. Title VII and the ADEA are not "general civility code[s]." Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). "Workplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe and pervasive standard." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). "[C]omplaints premised on nothing more than rude treatment by co-workers, callous behavior by supervisors, or a routine difference of opinion and personality conflict with one's supervisors are not actionable under Title VII" or the ADEA. *Id.*

Insofar as White alleges he was subjected to a racially hostile work environment, his claim fails because he has not shown that any action of Rowan, Berg, Stamper, or Kosch was racially motivated. *See* E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 667 (4th Cir. 2011) and Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir. 2000) (dispute with supervisors absent proof that alleged harassment was motivated by race insufficient to avoid summary judgment).

**Conclusion**

Based on a review of the record, it is recommended that Defendant's motion for summary judgment be **granted**.

_____
Joseph R. McCrorey
United States Magistrate Judge

Columbia, South Carolina

August 15, 2011

**The parties are referred to the Notice Page attached hereto.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).